UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x   Docket No.: 04 CV 03066
RAND LAWRENCE, on behalf of
himself and all others similarly situated,

                 Plaintiff,

      -against-                      Assigned To: U.S.D.J. Owen

BORAH, GOLDSTEIN, ALTSCHULER,
SCHWARTZ & NAHINS, P.C. and DAVID
STRAUSS,

                 Defendants.
---------------------------------------------------------x

# DEFENDANTS' REPLY MEMORANDUM OF LAW
# IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

              Respectfully submitted,

              CALLAN, KOSTER, BRADY & BRENNAN, LLP

              By:_____
                SCOTT W. BERMACK (SB-8842)
                Attorneys for Defendants
                BORAH, GOLDSTEIN, ALTSCHULER,
                SCHWARTZ & NAHINS, P.C. and
                DAVID STRAUSS
                One Whitehall Street, 10th floor
                New York, New York 10004
                (212) 248-8800

**REPLY STATEMENT OF FACTS**

The facts of this case are simple and undisputed. Three pages of text were sent to the plaintiff on the same date. One of those pages was a thirty-day validation notice so clearly drafted that even plaintiff's counsel can find no fault with it; and the other two were duplicate copies of a rent demand, served in the exact manner and form mandated by New York State's RPAPL statute. There is no statutory violation here.

Plaintiff's counsel is attempting to characterize the simple facts of this case as "cryptic" or "metaphysical" (to quote from their Memorandum) because they are hoping to hide the weakness of their arguments by clouding the issues.

In essence, plaintiff's opposition Memorandum repeats the following two arguments in multiple ways:

First, plaintiff claims that the RPAPL notice "overshadows, confounds and dilutes" the thirty-day validation period" provided by the FDCPA notice (Memorandum in Opposition, Page 2), in a manner confusing to the "least sophisticated consumer." To maximize the potential for confusion, plaintiff's counsel chooses to treat the documents as intimately entwined with each other and ignores the fact that, though they are contained in the same envelope, they are printed on two sheets of paper.

Second, plaintiff's counsel claims that the defendants failed to provide an appropriate FDCPA notice to the plaintiff at all. For this purpose, they choose to arbitrarily consider *one* of the two Rent Demand notices, *taken by itself*, as constituting the sole initial communication between the defendants and the plaintiff. But of course it was not. The underlying papers submitted to this court by both the plaintiffs *and* the defendants make it clear that the plaintiff received one copy of an FDCPA validation notice, as mandated by

Federal statute, and two copies of a Rent Demand, as mandated by the laws of the State of New York.

Each of plaintiff's arguments relies on a completely different interpretation of the facts (for lack of notice to apply, only the RPAPL notice, by itself, can be considered as the initial communication; but to claim confusion, plaintiff must consider the RPAPL notice and the FDCPA notice as somehow bewildering). In addition to being contradictory, plaintiff's arguments are also unavailing, as shown below.

Third and finally, plaintiff's characterization of the past conduct of defendants is incorrect and improper. The defendants have never, at any time, attempted to "[avoid] meaningfully giving debtors the thirty-day validation notice required under the FDCPA." (Pltf. Brief, P.1). What they have attempted to do, rather, is to "thread the needle" of providing tenants with the mandatory notices required by the FDCPA and the RPAPL, without having those notices overshadow or contradict each other, and to advise tenants of their rights under both the State and Federal statutes as clearly as possible.

As plaintiff's counsel points out, in <u>Romea v. Heiberger & Associates,</u> 163 F.3d 111 (2nd Cir. 1998), the Second Circuit determined that landlords' attorneys are "debt collectors" bound by the FDCPA. However, prior to that point, "[f]or more than 20 years, the effects of this extremely powerful law had little or no impact on summary nonpayment proceedings." <u>Citibank (South Dakota) N.A. v. Jones,</u> 184 Misc.2d 63, 706 N.Y.S.2d 301 (N.Y. Dist. Ct. 2000). The case cited by plaintiff, <u>Garmus v. Borah, Goldstein, Altschuler & Schwartz, P.C.,</u> 1999 WL 46682 (S.D.N.Y.1999), was based on the service of a Three-Day Rent Demand that took place on January 5, 1998, before the <u>Romea</u> decision was even issued. Prior to that time, it is true, the defendants did not believe that landlords' attorneys serving Three-

Day Notices pursuant to RPAPL were "debt collectors" within the meaning of the FDCPA; but then, for the *20 years* prior to the Second Circuit's decision in Romea, virtually nobody did. Plaintiff's attempt to portray the defendants' failure to anticipate this shift in the law as somehow culpable is misleading and improper.

The plaintiff also makes reference to the matter of Sibersky v. Borah, Goldstein, Altschuler & Schwartz, 2000 WL 1448635 (S.D.N.Y. 2000), for the proposition that the defendants attempted to "pretend" that RPAPL notices had been served by landlords, instead of by the defendants' office, "instead of complying with *Romea.*" (Pltf. Brief, P.2). Plaintiff's counsel's assertion on this point is untrue. As the case cited by plaintiff makes clear, the Three-Day notice in the Sibersky case was forwarded to the plaintiff in September of 1998, very shortly after the decision was handed down in Romea, and represented an effort by the defendants to *comply* with the FDCPA while continuing to enforce the rights of their client, a landlord in a summary eviction proceeding, under the RPAPL.[1]

In the immediate wake of Romea, there was a period of understandable confusion as to how parties could simultaneously comply with the seemingly contradictory requirements of the RPAPL and the FDCPA. In response to a petitioner's allegation that

---

[1] The plaintiff's repeated mischaracterizations of these prior decisions, and of the defendants' past conduct generally, is a clear indication of the weakness of their arguments in this case. Lacking a good-faith basis for finding a violation of the FDCPA in the text of the communications forwarded to the plaintiff in this matter, plaintiff's counsel seeks to cloud the issue, and distract this court's attention from the central issue of this case: the sufficiency of the notices received by their client, the plaintiff in this matter. The defendants have always made a good-faith effort to comply with the requirements of this rapidly shifting area of the law, and it is improper for the plaintiffs to imply otherwise, particularly by willfully misrepresenting the legal precedents, as they do in this case.

the Romea decision would lead to "complete chaos and anarchy in the courts," the Civil Court of the City of New York, which has primary jurisdiction over summary eviction proceedings, issued its decision in the matter of Eina Realty v. Calixte, 178 Misc.2d 80 (N.Y. City Civ. Ct. 1998). The court conceded that,

> "[t]here is simply no getting around the fact that R.P.A.P.L. § 711(2), which permits the commencement of litigation within three days of the service of the rent demand notice, is directly inconsistent with 15 U.S.C.A. § 1692g(a)(3), which requires that the debt collector notify the debtor in writing that the debtor has 30 days to 'dispute the validity of the debt.' Nor is R.P.A.P.L. § 711(2) consistent with 15 U.S.C.A. § 1992e(11), which requires that when a debt collector communicates with a debtor the debt collector must inform the debtor that it 'is attempting to collect a debt and that any information obtained will be used for that purpose.' Given the obvious inconsistency between the State and Federal statutes, the state statute is effectively 'supersede[d] by the FDCPA', as the Court explained in Hairston v. Whitehorn & Delman, 1998 WL 35112 (S.D.N.Y.) [further cites omitted]."

However, the Eina Realty court denied that "chaos" would ensue from this contradiction, and helpfully cited two possible ways for landlords to escape the seeming conflict between the statutes. "First and most importantly," the Court observed, "the provisions of the FDCPA only apply when it can be said that the written rent demand was signed and sent by the landlord's debt collecting attorney. Landlords can easily avoid the effect of this Court's decision and the provisions of the FDCPA generally, by the simple expedient of serving the rent demands themselves, or, even better, by 'personally' demanding the rent consistent with R.P.A.P.L. § 711(2)."Eina Realty v. Calixte, 178 Misc.2d 80 (N.Y. City Civ. Ct. 1998) [quotations in original]. Taking the Eina court up on this suggestion was the cause of the allegations in the Sibersky case.

As shown below, an attorney representing a New York landlord in a summary

5

eviction proceeding based on nonpayment of rent must walk a fine line between the strictures and requirements of the RPAPL, and those of the FDCPA. As the above cases illustrate, the path between these statutes is narrow; but it must, nonetheless, exist. A law firm making a good faith effort to provide all necessary notifications under the FDCPA, and the RPAPL, by means expressly commanded by statute, as the defendants in this case have done, should not be deemed to be in violation of the FDCPA.

Whether the motion in this case is denominated an application for summary judgment or an application for dismissal makes no difference. The plaintiff's case hinges on the legal sufficiency of the notifications contained in the materials that both the plaintiff and the defendants admit that he received. If, as we contend, the notifications provided to the plaintiff are sufficient, then the cause of judicial efficiency would best be served by the court's ruling on the text of those notifications at this juncture, before the parties, their counsel, or this court expend any more of their limited resources on this case.

**Point I:      Standard of Review**

While it is true that we mutually agreed with the plaintiff not to "introduce any documents or evidence outside the four corners of the complaint," as asserted by plaintiff's counsel, this office has never attempted to do so. Rather, *plaintiff* has attempted to introduce such evidence, by citing past cases against the defendants for the *factual* findings that plaintiff's counsel claims (incorrectly) that they contained. The decision in Sibersky, for instance, was a denial of a motion to dismiss by the defendants in that matter, not a determination that their conduct had been "unlawful," as plaintiff's counsel falsely asserts.

Whether the present application is treated as a Motion to Dismiss pursuant to CPLR 12(b)(6), rather than a motion for summary judgment is a meaningless distinction, because

the plaintiffs' case is meritless even on the facts as alleged in the plaintiff's complaint. The content of the defendants' communications with the plaintiff are not in doubt. Those communications are, in fact, annexed to both the plaintiff's Complaint and to both parties' papers on the present application. There is no basis, in the content of those communications, for the plaintiff's law suit against the defendants, and this case should be dismissed.

On a motion to dismiss, the plaintiff's allegations of fact in the Complaint must be taken as true (*see,* Logicom Inclusive, Inc. v. W.P. Stewart & Co., 2004 WL 1781009 [S.D.N.Y., August 10, 2004]), and "[t]he court must deny the motion 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Weinstein v. Appelbaum, 193 F.Supp.2d 774 (S.D.N.Y. 2002) (*quoting* Stewart v. Jackson & Nash, 976 F.2d 86 [2nd Cir. 1992]).

However, "general, conclusory allegations need not be credited. . .when they are belied by more specific allegations of the complaint." Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1092 (2nd Cir. 1995).

In this case, the plaintiff's conclusory assertion that there is an FDCPA violation in this case is belied by the plaintiff's own attachments to the complaint in this matter, namely the RPAPL Notice and FDCPA Notice which constitute the communications sent to the debtor. In fact, no matter how this motion is denominated, the defendants are seeking the court's intervention to evaluate the contents of these communications on the context of the FDCPA, as this is the issue on which the disposition of this action will ultimately hinge.

In addition, the materials subject to the court's review are not limited to the plaintiff's allegations themselves. "When deciding a motion to dismiss pursuant to Rule 12(b)(6), the

court may consider documents attached to the complaint as exhibits or incorporated in it by reference." Hamilton v. Wilson, 2004 WL 169789 (S.D.N.Y., January 28, 2004), *citing* Brass v. American Film Technologies, Inc., 987 F.2d 142 (2nd Cir. 1993).

It is the position of the defendants that their liability or lack thereof hinges exclusively on the information that was or was not provided to the plaintiff in the communications annexed to the plaintiff's complaint as Exhibits "A" and "B." The text of these communications is not in dispute; and based on their contents, there is simply no basis for the plaintiff's claim.

The issue to be determined by this court on this application is legal in nature, and concerns the question of whether the communications admittedly received by the plaintiff were, or were not, in compliance with the F.D.C.P.A.

If this court should find, within the four corners of those communications, that no violations of the F.D.C.P.A. were committed, the plaintiff's case against the defendants must be dismissed.

**Point II:    The FDCPA Notice Forwarded by Defendants Was In Compliance With All Of The Requirements Of The Statute**

Upon a close reading of the plaintiff's papers in opposition, it is clear that the plaintiff is unable to find fault with the FDCPA notice forwarded to the plaintiff by the defendants. Rather, all of the supposed defects in the notice cited by plaintiff's counsel are claimed on a reading of the *RPAPL notice*, as if the actual *FDCPA notice* forwarded by the defendants for the purpose of advising him of his rights under the FDCPA did not exist.

Although plaintiff claims, in Point II(D) of the Memorandum in Opposition to the present motion, that the FDCPA Notice forwarded by the defendants failed to contain

mandatory notifications required by the FDCPA, the correspondence contained each and every notice that the FDCPA requires, using language copied from the FDCPA itself.

Even assuming, for the sake of argument, that the FDCPA Notice was not part of the initial communication, plaintiff cannot possibly claim that it was sent more than five days after the initial communication.

Section 1692g(a) of the FDCPA requires a validation notice to be sent to a consumer "within five days after the initial communication with a consumer in connection with the collection of any debt" containing certain mandatory notices and pieces of information. The FDCPA Notice provided by the defendants contains all of the necessary information.

In compliance with FDCPA 1692g(a)(1), the FDCPA Notice sets forth the amount of the debt in the upper right-hand corner, as $11,306.31, describing it as both an "AMOUNT DUE" and as a "DEBT OWED"

In compliance with FDCPA 1692g(a)(1), the FDCPA Notice makes it clear in the very first sentence that the creditor to whom the debt is owed is the plaintiff's landlord.

In compliance with FDCPA 1692g(a)(3), the FDCPA Notice states, in the first sentence of the second paragraph, that, "[u]nless you dispute the validity of the debt, or any portion thereof, within thirty (30) days of receipt of this notice, the debt will be assumed to be valid."

In compliance with FDCPA 1692g(a)(4), the FDCPA Notice states, in the second sentence of the second paragraph, that, "[i]f you notify this office in writing within the thirty (30) day period that you dispute the debt, or any portion thereof, this office will obtain verification of the debt, and such verification will be mailed to you.

Finally, in compliance with FDCPA 1692g(a)(5), the FDCPA Notice states in the third

sentence of its second paragraph, that "[i]f you request this office in writing, within thirty (30) days of receipt of this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor."

**Point III:    The Communications Forwarded by Defendants Were Not Confusing, and Did Not Violate the FDCPA.**

Plaintiff's counsel claims that a rent demand making reference to an attached 30-day validation notice in a rent demand is somehow too "confusing" to meet the "least sophisticated consumer" standard for compliance with the FDCPA.

Plaintiff cites Russell v. Equifax A.R.S., 74 F.3d 30 (2d Cir. 1996) for the proposition that a "demand for payment within ten days in the first notice [from the debt collector] overshadowed and contradicted the validation notice." Plaintiff appears to believe that the FDCPA mandates a 30-day grace period from the initial contact during which a debtor may "mull over disputing the claim" (Pltf. Memorandum In Opposition, P. 8) and no further action by the debt collector may be taken. However, Russell does not stand for this proposition, and neither does the FDCPA.

Under the FDCPA, collection activities do not have to cease unless and until the debtor requests verification of the debt, in writing, and within the 30-day window. If such a request is made, *then* the debt collector is required to cease further activities, but only until verification of the debt has been obtained. DeSantis v. Computer Credit, Inc., 269 F.3d 169 (2nd Cir. 2001).

Service of a Rent Demand served on the plaintiff in conjunction with the FDCPA Notice was not confusing, and did not "overshadow" the plaintiff's rights under the FDCPA.

The "least sophisticated consumer" standard does not mean, as plaintiff's counsel

10

seems to suggest, the literal "least sophisticated consumer" in the history of commerce. Rather, as interpreted in the Second Circuit, that term is taken to mean a reasonable but unsophisticated consumer, and even an unsophisticated consumer may be expected to follow prominent directions contained in a letter to review a second page containing a statement of his rights under the FDCPA. <u>Miller v. Wolpoff & Abramson, L.L.P.</u>, 321 F.3d 292 (2nd Cir. 2003). What is required to meet this standard is that a validation notice convey the validation information clearly and effectively to the consumer. <u>Savino v. Computer Credit, Inc.</u>, 164 F.3d 81 (2nd Cir. 1998). The notice given in this case clearly meets that standard, and plaintiffs cannot sensibly claim that the FDCPA notice forwarded by the defendants failed to incorporate all of the necessary information.

The FDCPA does not eliminate the rights of creditors to demand payment in a shorter time period than the FDCPA's 30-day validation period. The law does not give debtors a mandatory 30-day period to "mull over" whether or not they wish to pay. Rather, it gives debtors 30 days to request verification, and restrains collection activities only if a request for verification is received, and then only for so long as it takes for verification of the debt to be obtained.

**Point IV:    The Service Method Practiced By The Defendants Was In Strict Compliance With The Method Set Forth In RPAPL § 735, And The Papers Sent To The Plaintiff Constitute A Single Communication.**

Rent demands made pursuant to RPAPL §711(2), such as the one at issue in this case, must be served according to the very specific guidelines prescribed in RPAPL § 735. The method of service in this case, as the plaintiff's memorandum indicates, was served in compliance with RPAPL §735.

RPAPL § 735 states that service of a rent demand served pursuant to RPAPL

11

§711(2) may be completed by "affixing a copy of the notice and petition upon a conspicuous part of the property to be recovered" (such as the front door, as in this case), and "in addition, within one day after such delivery. . . By mailing to the respondent by registered or certified mail." Once that has been completed, "the notice of petition. . .together with proof of service thereof shall be filed with the court or clerk thereof within three days[.]" RPAPL § 735(2)(b).

It is only *then,* the statute significantly notes, upon the filing of proof of service, that service upon the respondent is deemed complete. RPAPL § 735(2)(b).

By setting forth a detailed method of service which calls for the provision of duplicate copies of a Rent Demand on a tenant within one day of each other, and by setting tight deadlines for the filing of proof of such service, the statute clearly intends the two copies to constitute a *single communication* with the tenant in question, both of them made effective simultaneously at the moment the affidavit of service of both documents is placed on file with the court.

The FDCPA notice and the RPAPL Notice were therefore provided as part of the same communication with the plaintiff, which constitutes the initial contact between the plaintiff and the defendants in this action.

Since the initial communication contained the FDCPA Notice, which, as shown above, fully described the plaintiff's rights under the FDCPA, there is no basis for the plaintiff's claim in the present action. The plaintiff's claims against the defendants should be dismissed.

## **CONCLUSION**

In short, the plaintiff has failed to adduce any argument that the defendants have

violated any of the provisions of the FDCPA, and the defendants are entitled to summary judgment dismissing this case in its entirety.